**Robert MOORE and Deborah Moore, His Wife, Plaintiffs,**

v.

**Joseph F. DeBIASE, John Gibney, Joseph Cummins, Louis Cippola, Thomas DeNapoli, Philip Ventriglia, Patrick Robinson, Cheryl O'Neill, Borough of Dunellen and Borough of Dunellen Police Department, Defendants.**

Civ. A. No. 91–1423.

United States District Court, D. New Jersey.

June 20, 1991.

**1312**

Barry A. Cooke, Blaustein & Wasserman, Woodbridge, N.J., for plaintiffs.

William H. Gazi, Foley, Gazi & Jorgensen, P.A., Iselin, N.J., for defendants John Gibney, Louis Cippola, Thomas DeNapoli, Philip Ventriglia, Cheryl O'Neill, Joseph Cummins, Borough of Dunellen and Borough of Dunellen Police Dept.

Joseph J. Benedict, Benedict, Altman & Swanson, New Brunswick, N.J., for defendant Joseph F. DeBiase.

Gerard H. Hanson, Hill Wallack, Princeton, N.J., for defendant Patrick A. Robinson.

## OPINION

LECHNER, District Judge.

### Introduction

This is an action brought by plaintiffs Robert Moore ("Moore") and Deborah Moore (collectively, the "Plaintiffs") against Joseph F. DeBiase ("DeBiase"), John Gibney ("Gibney"), Joseph Cummins ("Cummins"), Louis Cippola ("Cippola"), Thomas DeNapoli ("DeNapoli"), Philip Ventriglia ("Ventriglia"), Patrick Robinson ("Robinson"), Cheryl O'Neill ("O'Neill"), the Borough of Dunellen ("Dunellen") and the Dunellen Police Department (the "Police Department") (collectively, the "Defendants"). Currently before the court is the motion of Plaintiffs to remand this action to the superior court of the State of New Jersey.[1] For the reasons set forth below, the motion to remand is granted.

### Facts and Procedural History

Plaintiffs filed their complaint (the "Complaint") in the Superior Court of the State of New Jersey, Law Division, Middlesex County, on 22 February 1991. Moore is and was at all relevant times a member of the Police Department. Complaint, ¶ 1. In addition, Moore served as president of

---

**1.** Plaintiffs have submitted the following for consideration: Letter Brief in Support of Motion to Remand; Certification of Barry A. Cooke, Esq.

Gibney, Cippola, DeNapoli, Ventriglia, O'Neill, Cummins and Dunellen (collectively, the "Re-

moving Defendants") have submitted their Brief in Opposition to Motion to Remand ("Defendants Brief"). DeBiase has submitted a letter stating he opposes Plaintiffs' motion to remand and relies upon the Defendants Brief.

the Dunellen Police Benevolent Association Local 146 (the "PBA"), the collective bargaining unit for Dunellen police officers. *Id.*, ¶ 3. DeBiase is and was at all relevant times the Chief of Police of the Police Department. *Id.*, ¶ 2. Gibney, Cummins, Cippola, Ventriglia, Robinson and O'Neill were at all relevant times publicly elected officials of Dunellen.[2] *Id.*, ¶¶ 3–8. Dunellen is a municipality established under New Jersey law. *Id.*, ¶ 9.

Plaintiffs brought suit against the Defendants for certain acts or omissions allegedly performed under color of New Jersey law. *Id.*, ¶ 11. On or about 1 January 1988, DeBiase was promoted to the position of Chief of the Police Department. Plaintiffs allege DeBiase implemented a new work schedule and promoted his brother, who was also a member of the Police Department, to the position of Lieutenant. *Id.*, First Count, ¶ 2. Subsequently, Moore, in his capacity as president of the PBA, filed a grievance against DeBiase, claiming the implementation of the new work schedule was an unfair labor practice.

The essence of Plaintiffs' Complaint centers on the allegations that the Defendants and particularly DeBiase initiated a campaign to discredit and terminate Moore in retaliation for the filing of the grievance against DeBiase. Plaintiffs allege DeBiase issued meritless reprimands of Moore and caused various investigations and intrusions into Moore's private affairs. *Id.*, First Count, ¶ 6. In addition, DeBiase allegedly initiated a disciplinary proceeding against Moore. *Id.* Plaintiffs also allege Moore was wrongfully ordered to undergo a medical examination to determine whether he was medically fit for duty. *Id.*, First Count, ¶¶ 7–9. Moore refused to submit to the examination and was thereafter suspended from duty.

After Moore was suspended, DeBiase filed a grievance against Moore for violating Police Department rules. DeBiase charged Moore chronically disobeyed his superiors, was guilty of habitual misconduct and failed to submit to a medical evaluation to determine his fitness for duty. Subsequently, DeBiase commenced disciplinary proceedings against Moore and sought his removal from the Police Department.

Plaintiffs then filed their Complaint which contains nineteen Counts.[3] The first seven Counts and the Ninth Count are directed exclusively at DeBiase. In the First Count, Plaintiffs seek to recover from DeBiase for his allegedly malicious, intentional and wrongful suspension of Moore. In the Second Count, Plaintiffs seek to recover from DeBiase for the public embarrassment and ridicule Moore suffered as a result of his malicious and wrongful suspension. In the Third Count, Plaintiffs seek to recover from DeBiase for, among other things, DeBiase's attempts to undermine Moore's position as PBA president.

In the Fourth Count, Plaintiffs seek to recover from DeBiase for his abuse of authority in attempting to cause the termination of Moore. In the Fifth Count, Plaintiffs seek to recover from DeBiase for allegedly conspiring with other public officials in Dunellen to falsify and to prosecute charges against Moore. In the Sixth Count, Plaintiffs seek to recover from DeBiase for harm Moore suffered when DeBiase allegedly perjured himself during the disciplinary proceeding against Moore. In the Seventh Count, Plaintiffs seek to recover from DeBiase for defamation. In the Ninth Count, Plaintiffs seek to recover from DeBiase for allegedly attempting to intimidate Moore into terminating his position with the Police Department.

**2.** These defendants will be referred to collectively as the "Public Officials." The Complaint does not indicate the status or position of DeNapoli. For purposes of this opinion, it is assumed DeNapoli is one of the Public Officials.

**3.** It is difficult to ascertain from the face of the Complaint which claims are brought solely by

Moore, which claims are brought solely by Deborah Moore and which claims are brought jointly by Moore and Deborah Moore. Without deciding whether the Plaintiffs, jointly or severally, have standing to bring the claims, it is assumed the Complaint brings the claims jointly.

The following Counts are directed at various defendants. In the Eighth Count, Plaintiffs seek to recover from the Public Officials for refusing to lift Moore's suspension from the Police Department. In the Tenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for breaching an agreement to conduct the disciplinary proceeding against Moore in private and without public disclosure. In the Eleventh Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen, and the Police Department for tortiously interfering with Moore's contractual relations with Dunellen. In the Twelfth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for discriminating against Moore because of his PBA activities.

The Thirteenth through Fifteenth Counts bring claims grounded in federal and/or state constitutional law. In the Thirteenth Count, Plaintiffs seek to recover from the Public Officials, Dunellen and the Police Department for negligently or intentionally permitting DeBiase to suspend Moore in violation of an unspecified constitution. In the Fourteenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for their deprivation, in violation of 42 U.S.C. § 1983, of Moore's rights, privileges and immunities secured by the United States Constitution and New Jersey law. In the Fifteenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for their conspiracy to violate 42 U.S.C. § 1983 under federal and state law.

In the Sixteenth Count, Plaintiffs seek to recover from Dunellen and the Police Department, on a *respondeat superior* theory, for the wrongful acts of their agents DeBiase and the Public Officials. In the Seventeenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for Moore's expenditures in defending himself against the allegedly fraudulent charges brought by defendants. In the Eighteenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for their conduct which resulted in a diminution of the quality of Moore's life. In the Nineteenth Count, Plaintiffs seek to recover from DeBiase, the Public Officials, Dunellen, and the Police Department for Deborah Moore's loss of Moore's consortium and services.

On or about 9 April 1991, the Removing Defendants removed this action from the Superior Court, pursuant to 28 U.S.C. §§ 1441(b) and 1446(b), based upon a federal question presented in the Complaint. Plaintiffs now move to remand this action back to the superior court pursuant to 28 U.S.C. § 1447(c). For the reasons set forth below, Plaintiffs' motion is granted.

*Discussion*

A. *Remand Pursuant to 28 U.S.C. § 1447(c)*

Under 28 U.S.C. § 1441(b), "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties...." *Id.* Section 1446(b) governs the procedure for removal.[4] Because the Complaint alleges causes of action under 42 U.S.C. § 1983 for violations of the United States Constitution, it appears this action falls within the

---

**4.** Section 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. 1446(b).

purview of section 1441(b).[5] Subject matter jurisdiction appears to exist over Plaintiffs' purely state laws claims on the basis of pendent jurisdiction.[6] *See Samaroo v. Samaroo*, 743 F.Supp. 309, 315 (D.N.J. 1990) ("Section 1441(b) has been universally interpreted to permit removal of non-federal claims only if they are within the pendent jurisdiction of the Court."); 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3722 at 281 (1985) ("the doctrine of pendent jurisdiction ... is fully applicable to removal based on the existence of a federal question").

Plaintiffs move to remand this action under 28 U.S.C. § 1447(c). Section 1447(c) provides, in pertinent part: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* As indicated above, however, it appears subject matter jurisdiction exists over the section 1983 claims asserted by Plaintiffs. Accordingly, remand under section 1447(c) is not appropriate.

Section 1447(c), however, is not the only statutory basis for remand. Under 28 U.S.C. § 1441(c), a district court has the discretion to remand "all matters in which State law predominates." *Id.* Therefore, it must be considered whether this action should be remanded under section 1441(c).[7]

### B. *Remand Pursuant to 28 U.S.C. § 1441(c)*

Section 1441(c) provides:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may *remand all matters in which State law predominates.*

28 U.S.C. § 1441(c) (emphasis added).

Section 1441(c) was recently amended by Congress. *See* the Judicial Improvements

---

**5.** The party seeking removal has the burden of showing that federal subject matter jurisdiction exists, that removal was timely and that removal is proper. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Authority v. Union Switch and Signal Division, Amer. Standard, Inc.*, 809 F.2d 1006, 1011 (3d Cir.1987), *cert. dism'd*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). Significantly, "[t]he removal statutes 'are to be strictly construed against removal and all doubts are to be resolved in favor of remand.'" *Boyer*, 913 F.2d at 111 (quoting *Steel Valley*, 809 F.2d at 1010).

**6.** The existence and exercise of pendent jurisdiction enables federal courts to hear state law claims over which there is no independent basis of jurisdiction. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988). Whether a complaint supports the exercise of pendent jurisdiction depends upon three factors: whether the court has the "constitutional power" to exercise pendent jurisdiction, whether the exercise of jurisdiction would contravene or undermine federal statutory law and whether the exercise of pendent jurisdiction is appropriate in the particular circumstances of the case. *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 105 (3d Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989); *Ambromovage v. United*

*Mine Workers*, 726 F.2d 972, 989–91 (3d Cir. 1984).

The three part test of pendent jurisdiction utilized by the Third Circuit builds upon the groundwork laid by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Court stated the power to exercise jurisdiction over federal and state law claims in a single action is present whenever all the claims "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. at 1138. The *Gibbs* Court drew an important distinction between the power to exercise pendent jurisdiction and the discretion to retain such jurisdiction over state law claims. *Carnegie–Mellon Univ.*, 484 U.S. at 349, 108 S.Ct. at 618. Significantly, the Court considers pendent jurisdiction to be "'a doctrine of discretion, not of plaintiff's right.'" *Id.* at 350, 108 S.Ct. at 618 (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139).

The doctrine of pendent jurisdiction recently has been codified at 28 U.S.C. § 1367. *See Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir.1991).

**7.** Even though section 1441(c) was not specifically raised by Plaintiffs, it is appropriate to inquire concerning the question of subject matter jurisdiction. 28 U.S.C. § 1446(c); *see Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 958, 960 (3d Cir.1980); *see also Boyer*, 913 F.2d at 110.

Act of 1990 (the "Act"), Pub.L. No. 101–650, § 312, 104 Stat. 5089, 5114 (1990). Prior to its amendment, section 1441(c) provided:

> Whenever a separate and independent claim or cause of action, *which would be removable if sued upon alone,* is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, *remand all matters not otherwise within its original jurisdiction.*

28 U.S.C. § 1441(c) (amended language emphasized), *amended by* the Act, Pub.L. No. 101–650, § 312, 104 Stat. at 5114. Congress replaced the language referring to actions removable if sued upon alone with the language referring to 28 U.S.C. § 1331. The Act, Pub.L. No. 101–650, § 312(1), 104 Stat. at 5114. In addition, Congress replaced the language referring to remand of matters not within a court's original jurisdiction with the language allowing remand of all matters in which state law predominates. The Act, Pub.L. No. 101–650, § 312(2), 104 Stat. at 5114.

Prior to the amendment of section 1441(c), the Federal Courts Study Committee (the "Committee") had issued a report which addressed the history of section 1441(c) and recommended its repeal.[8] *See* Report of the Federal Courts Study Committee (2 April 1990) (the "Report"); *see also* I Federal Courts Study Committee, Working Papers and Subcommittee Reports (1 July 1990) (the "Working Papers").[9] The Committee stated section

1441(c) was originally intended to preserve a defendant's power to remove a non-federal question diversity case even after the plaintiff joined a non-removable claim against a non-diverse defendant, thereby destroying diversity. Report at 94; *see* Working Papers at 532; *see also Kaye Assoc. v. Board of Chosen Freeholders,* 757 F.Supp. 486, 488 (D.N.J.1991) (discussing history of prior version of section 1441(c)). Under the prior version of section 1441(c), the entire case would be removable if the original diverse claim were separate and independent from the newly joined non-diverse claim. *See Kaye Assoc.,* 757 F.Supp. at 488.

The Working Papers, however, suggest this original purpose was defeated by the Supreme Court decision in *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). *See* Working Papers at 532. In *Finn,* a Texas plaintiff brought suit in state court on an insurance claim against two foreign insurance companies and their Texas agent. 341 U.S. at 7–8, 71 S.Ct. at 537. Prior to trial, the two insurance companies removed the action to federal court under 28 U.S.C. § 1446. *Finn,* 341 U.S. at 7, 71 S.Ct. at 537. After judgment was entered, the plaintiff appealed the removal of the action. *Id.* at 8, 71 S.Ct. at 537.

The Court held removal was inappropriate. *Id.* at 18–19, 71 S.Ct. at 542–43. The Court reached this conclusion by noting Congress drafted section 1441(c) to limit the right of removal under its predecessor statute, 28 U.S.C. § 71 (1946).[10] *Finn,* 341

---

**8.** The Committee was appointed by the Chief Justice to examine problems in the federal judiciary.

**9.** The Working Papers "were valued background materials which the Committee determined should be published for general consideration whether or not the Committee agreed with their substantive proposals." Working Papers at cover letter. Significantly, however, "[i]n no event should the [Working Papers] be construed as having been adopted by the Committee." *Id.* Although it is acknowledged the Working Papers do not perforce represent the views of the Committee, the Working Papers should be considered because both the Report and the legislative history are notably brief in their discussion

of section 1441(c). *See generally Martin v. Drummond Coal Co.,* 756 F.Supp. 524, 525 (N.D. Ala.1991) (noting legislative history of section 1441(c), as amended, is "sparse and enigmatic").

**10.** Section 71 read, in pertinent part:
> ... [W]hen in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants may remove said suit into the district court of the United States for the proper district.

*Finn,* 341 U.S. at 9, 71 S.Ct. at 537–38 (quoting 28 U.S.C. § 71 (1946), *amended by,* 28 U.S.C. § 1441(c)).

U.S. at 10, 71 S.Ct. at 538. The Court stated that under section 71, an action such as that brought by the Texas plaintiff was removable because the claims brought against the diverse insurance companies could be interpreted as suits "separable" from the claims brought against the non-diverse agent. *Id.* at 11, 71 S.Ct. at 538–39. Separability under section 71 was largely a question of whether the claims to be removed could be characterized as a case or controversy that a plaintiff could have brought in federal court in diversity. *Finn,* 341 U.S. at 11, 71 S.Ct. at 538–39. If so, then the entire action, including the non-diverse claims, could be removed under section 71. *Id.*

The Court then noted section 71 was redesignated as section 1441(c) and amended to allow removal only when the diverse claims were causes of action "separate and independent" from the non-diverse claims. *Id.* The Court stated the use of the term " 'independent' g[ave] emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal." *Id.* at 12, 71 S.Ct. at 539. The Court then held claims were not separate and independent under section 1441(c) when "there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions...." *Id.* at 14, 71 S.Ct. at 540. Because the Texas plaintiff's causes of action against the foreign insurance companies were based on the same transactions and sought alternative recovery for the same loss as the claim against the Texas agent, the case was not removable under section 1441(c). *Id.* at 14–16, 71 S.Ct. at 540–41.

The Working Papers noted the Court's interpretation of section 1441(c) in *Finn* prevented the removal of a case in which diversity was destroyed by the joinder of a non-diverse defendant. Working Papers at 533. Because of *Finn,* the invocation of section 1441(c) in the type of case it was originally intended to address declined. Significantly, however, despite *Finn,* decisions occasionally permitted removal of a case in which diversity had been destroyed.

Working Papers at 533. These cases, although "rare[,] ... often seem[ed] inconsistent with decisions rejecting removal in similar circumstances." *Id.*

The Committee apparently agreed with this assessment. The Committee, like the Working Papers, pointed out the principal purpose of section 1441(c) was "to keep a defendant's right of removal to federal court alive when a state court plaintiff join[ed] an unrelated, non-removable claim." Report at 94. The Committee also agreed section 1441(c) would appear to apply to a diversity case in which the plaintiff brought a new state law claim against a non-diverse defendant. *Id.* at 94–95. Without explanation but in apparent agreement with the Working Papers, the Committee noted: "For complex reasons ... the statute cause[d] much litigation apart from the merits as defendants tr[ied] and mostly fail[ed] to qualify for separate claim removal." *Id.* at 95. The Committee recommended repeal of section 1441(c) to relieve federal courts from the burden of this litigation.

Congress, however, opted not to repeal section 1441(c). Congress apparently recognized the concerns of the Committee and the Working Papers and agreed that federal courts sometimes were faced with difficult determinations of whether state law claims between diverse parties were sufficiently separate and independent from state law claims between non-diverse parties so as to be removable. H.Rep. No. 101–734, 101st Cong., 2d Sess. ("H.Rep.") 23, *reprinted in* U.S.Code Cong. & Admin. News 1990, 6802, 6869; 136 Cong.Rec. S17570, S17581 (daily ed. 27 Oct.1990). Furthermore, Congress agreed those difficult determinations often led to conflicting and confusing results. H.Rep. at 23, U.S. Code Cong. & Admin.News at 6869; 136 Cong.Rec. at S17581.

Congress was sensitive, however, to the desirability of retaining removal on the basis of federal question jurisdiction and therefore declined to repeal section 1441(c). Rather, Congress opted to amend section 1441(c) to restrict the application of section 1441(c) to only cases in which there were

federal questions, thus eliminating any possibility that section 1441(c) could be invoked in a non-federal question case in which diversity was destroyed. H.Rep. at 23, U.S.Code Cong. & Admin.News at 6869; 136 Cong.Rec. at S17581; *see* 28 U.S.C. § 1441(c), as amended.

> The amendment would … retain the opportunity for removal in the one situation in which it seems clearly desirable. The joinder rules of many states permit a plaintiff to join completely unrelated claims in a single action. The plaintiff could easily bring a single action on a federal claim and a completely unrelated state claim. The reasons for permitting removal of federal question cases applies with full force.

H.Rep. at 23, U.S.Code Cong. & Admin. News at 6869; 136 Cong.Rec. at S17581.[11]

Congress further stated the amendment would simplify the removal determination: "In many cases the federal and state claims will be related in such a way as to establish pendent jurisdiction over the state claim. Removal of such cases is possible under Sec[tion] 1441(a). The amended provision [of § 1441(c)] would establish a basis for removal that would avoid the need to decide whether there is pendent jurisdiction." H.Rep. at 23, U.S.Code Cong. & Admin.News at 6869.[12]

By amending section 1441(c) the way it did, Congress intended to simplify determinations of removability. *Id.* Section 1441(c), as amended, permits removal only if there is a federal question claim separate and independent from the state law claims and only if the district court opts to retain the removed case.[13] *See, e.g., Dalworth*

**11.** This portion of the legislative history can be read to raise a serious question regarding section 1441(c). It may be argued, if this passage is read expansively, that Congress sought to authorize federal courts to adjudicate purely state law claims which were removed along with totally unrelated federal law claims. *See* H.Rep. at 23, U.S.Code Cong. & Admin.News at 6869; 136 Cong.Rec. at S17581 ("The plaintiff could easily bring a single action on a federal claim and a completely unrelated state claim."). Because any such state law claims are totally unrelated to the federal law claims and therefore would not provide a basis for pendent jurisdiction, there would be no independent basis for federal jurisdiction over the state law claims unless it happened to be between diverse parties. Absent diversity between the parties to the state law claims, it would be unconstitutional for a federal court to adjudicate such claims. It therefore could be argued Congress has tacitly approved an assertion of federal court jurisdiction which is on its face impermissible. *See infra* at nn. 13 & 16 (discussing constitutionality of federal court jurisdiction over unrelated state claims).

**12.** Although Congress referred to section 1441(a) in this passage, it appears the correct statute is section 1441(b).

> Sections 1441(a) and (b) provide:
> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. §§ 1441(a) and (b).

Section 1441(a) is invoked in removal based on diversity. *See, e.g., Simone v. Golden Nugget Hotel and Casino*, 844 F.2d 1031, 1032 (3d Cir. 1988); *Kaye Assoc.*, 757 F.Supp. at 486. In contrast, section 1441(b) is invoked in removal based on federal questions. *See, e.g., Samaroo*, 743 F.Supp. at 314; *see also*, 14A C. Wright, A. Miller & E. Cooper, *supra* § 3722. Because diversity has been eliminated as a basis for removal under section 1441(c), it appears Congress meant to refer to section 1441(b) in this passage.

**13.** The obvious effect of amended section 1441(c) will be a reduction in the number of diversity cases removed into federal court under section 1441(c). 14A C. Wright, A. Miller & E. Cooper, *supra* § 3724 (Supp.1991) 28 U.S.C.A. § 1441 Commentary (West Supp.1991). Under section 1441(c), as amended, no case may be removed, regardless of diversity, if there is no federal question. *See Patient Care, Inc. v. Freeman*, 755 F.Supp. 644, 647 n. 7 (D.N.J.1991) (discussing section 1441(c), as amended, in dicta).

In addition, section 1441(c), as amended, may be superfluous as a removal statute. *See* 28 U.S.C.A. § 1441 Commentary at 5–6. As discussed above, section 1441(c) has been turned

*Oil Co. v. Fina Oil & Chemical Co.*, 758 F.Supp. 410, 413 (N.D.Tex.1991) (court exercised discretion to adjudicate state law claim separate and independent from federal law claim removed under section 1441(c), as amended). Significantly, Congress provided "the district court may determine all issues [within the removed case], or, *in its discretion, may remand* all matters in which State law predominates." 28 U.S.C. § 1441(c) (emphasis added).

■ Congress did not define when state law predominates over a federal question claim in a case with pleadings which invoke both state and federal law. It has been noted this question "requires a value judgment by the federal court...." *Martin v. Drummond Coal Co.*, 756 F.Supp. 524, 527 (N.D.Ala.1991). One commentator has suggested state law predominates "[i]f the federal court finds that the federal claim, while plausible, is not really the plaintiff's

away from its original purpose of preserving removal power in diversity cases in which diversity has been destroyed. Now, section 1441(c) removal can be accomplished only in federal question cases.

Section 1441(b) governs the removal of federal question cases: 14A C. Wright, A. Miller & E. Cooper, *supra* § 3722. State law claims pendent to a removed federal law claim can also be removed under 28 U.S.C. § 1441(b). *Samaroo*, 743 F.Supp. at 315; *see* 28 U.S.C.A. § 1441 Commentary at 5. Consequently, section 1441(c) may be viewed as superfluous as a removal statute for a case involving a federal question claim with pendent state law claims.

Although section 1441(c) may be unnecessary for the removal of a federal question claim with pendent state law claims, section 1441(c) may be invoked in a federal question case involving non-pendent state law claims. State law claims which are not pendent to a federal law claim may theoretically fall into two categories: (1) those with enough of a relation to the federal claim so as to be related but separate and independent from the federal law claim and (2) those totally unrelated to the federal law claim. With respect to the separate and independent state law claims with some relation to the federal law claims, section 1441(c) might provide a basis for removal.

With respect to the totally unrelated state law claims, it would appear section 1441(c) may be construed to allow a federal court to adjudicate such state law claims. *See infra* n. 15. Section 1441(c), however, should not be so construed because a federal district court could not adjudicate those totally unrelated and non-pendent state law claims without violating the Constitution. *See* 28 U.S.C.A. § 1441 Commentary at 5;

main mission; that it is only an incident or adjunct of the state claim and that the state claim is the crux of the action...." 28 U.S.C.A. § 1441 Commentary (West Supp.1991). Because the question of whether state law predominates is value-laden, it is apparent the question must be answered by looking to the nature of the claims as set forth in the pleading [14] and by determining whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.[15]

■ One final issue needs consideration before Plaintiffs' Complaint may be addressed. By permitting remand of a case in which state law predominates, Congress granted district courts broad discretion to decide whether to retain such a removed matter or remand it to state

*infra*, n. 16. Under these circumstances, the usefulness of section 1441(c), as amended, appears to be limited to only the removal of federal question cases which include state law claims bearing some relation to, but are still separate and independent from, the federal question. Although the state law claims must be separate and independent from the federal question, they must still be sufficiently related to avoid potential constitutional infirmity.

14. The question of removability is determined by examining the pleadings. *Finn*, 341 U.S. at 14, 71 S.Ct. at 540; *Kaye Assoc.*, 757 F.Supp. at 488.

15. This qualitative approach is also suggested by the term "predominates" as it is implicated in discretionary exercises of pendent jurisdiction. In *Gibbs*, the Court suggested the exercise of pendent jurisdiction should be declined when "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought...." 383 U.S. at 726, 86 S.Ct. at 1139; *see Lovell Manuf. v. Export–Import Bank*, 843 F.2d 725, 732 (3d Cir. 1988). It has been held, for example, that discretion counsels against the assertion of jurisdiction over pendent state law claims when those claims involve novel questions of state law for which it would be preferable to leave to the state courts to decide. *Chandler v. Riverview Leasing, Inc.*, 602 F.Supp. 157, 158 (E.D.Pa. 1984). It is apparent that, at least in the context of pendent jurisdiction, the term "predominates" is suggestive of qualitative, not quantitative, scrutiny.

court.[16] *Martin*, 756 F.Supp. at 527. Congress did not indicate, however, what it meant by the term "matters." Congress did not state whether "matters" refers to the entire case or just that portion in which state law can be said to predominate.

Prior to its amendment, section 1441(c) permitted a district court to remand any separate and independent matter "not otherwise within its original jurisdiction." 28 U.S.C. § 1441(c), *amended by* the Act, Pub.L. No. 101–650, § 312, 104 Stat. at 5114. In other words, a district court could remand the state law claims not within its original jurisdiction but was required to retain the federal law claims. *Jersey Paving Co. v. Fidelity & Deposit Co.*, 603 F.Supp. 414, 416 (D.N.J.1985) (decided under prior version of section 1441(c)); 14A C. Wright, A. Miller & E. Cooper, *supra* § 3724 at 394–95; Working Papers at 535. "Matters," in the context of the prior version of section 1441(c), could only be interpreted to mean a discrete claim or cause of action and not the entire case.

Congress, as discussed above, changed this language to permit remand of all matters in which state law predominates. Although Congress retained the term "matters," it eliminated the limitation to only claims or causes of action not within the district court's original jurisdiction. When Congress changes statutory language, it may be inferred Congress intended to change the purpose of the statute. *McElroy v. United States*, 455 U.S. 642, 650–52 n. 14, 102 S.Ct. 1332, 1337 n. 14, 71 L.Ed.2d 522, *reh'g denied*, 456 U.S. 965, 102 S.Ct. 2047, 72 L.Ed.2d 491 (1982). Therefore, it may be inferred Congress intended to change the scope of what a district court could remand. Before, a district court could only remand the claim over which it did not have original jurisdiction: a non-federal law claim between non-diverse parties. Under the amended section 1441(c), it appears a district court may re-

---

16. It has been suggested section 1441(c), as amended, actually constricts the discretion to remand:

> ... [T]he remand provision of revised Section 1441(c) no longer gives the district court plenary discretion to remand those claims that absent joinder would have been non-removable. It is unclear what policy interests are served by narrowing a district court's power to remand unrelated claim [sic] after its Section 1441(c) removal.

14A C. Wright, A. Miller & E. Cooper, *supra* § 3724 at 72 (West Supp.1991). In this treatise, section 1441(c) is interpreted to permit remand only of matters in which state law predominates and not matters in which the state law claims are unrelated to the federal law claims.

This interpretation, however, is inconsistent with the section 1441(c). This interpretation ignores the fact that section 1441(c) has always been interpreted to permit remand of purely state law claims which have no relation to the removable federal law claims. 14A C. Wright, A. Miller & E. Cooper, *supra* § 3724 at 394–95; Working Papers at 535. In addition, this interpretation ignores the fact that Congress retained the "separate and independent" language when it amended section 1441(c). Accordingly, it may be assumed Congress intended to permit courts to continue to remand separate and independent state law claims.

Moreover, this interpretation is inconsistent with the Constitution. The Constitution does not permit federal courts to adjudicate cases which do not present federal questions. *See* U.S. Const. Art. III, § 2; *see also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807, 106 S.Ct. 3229, 3231–32, 92 L.Ed.2d 650 (1986). Similarly, the Constitution does not permit federal courts to adjudicate cases which do not fall within the jurisdiction of the federal courts as conferred by Congress. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) ("Congress ... defines the scope of federal jurisdiction within the constitutionally permissible bounds."). Therefore, a federal court may not constitutionally adjudicate a state law claim totally unrelated to the federal law claim when the parties are not diverse. *See Samaroo*, 743 F.Supp. at 316–17 (discussing potential unconstitutionality of prior version of section 1441(c) if it is construed to permit removal of unrelated state claims not within a federal court's original or pendent jurisdiction). Because a statute must be interpreted, if possible, in a manner consistent with the constitution, *United States v. Sussman*, 900 F.2d 22, 24 (3d Cir.1990) (citing *United States v. Security Indus. Bank*, 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982)); *West v. Bowen*, 879 F.2d 1122, 1132 (3d Cir.1989) (citing *Califano v. Yamasaki*, 442 U.S. 682, 693, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)), there is no basis to argue that section 1441(c) prevents a district court from remanding a purely state law claim between non-diverse parties which has no relation to a federal law claim in the same case.

mand even a claim over which it has original jurisdiction, so long as state law somehow predominates in that particular claim or cause of action. In other words, the term "matters," construed in the context of amended section 1441(c), should be read to permit remand of the entire case if the circumstances justify such remand. Congress, by granting the discretion to remand all matters in which state law predominates, intended to permit a district court to remand the entire case and not just the state law claims.

In this case, remand of the entire case is appropriate because Plaintiffs' state law claims predominate in the entire case.[17] Sixteen of the nineteen Counts in the Complaint allege causes of action based purely on state law. The federal law claims are found only in the Fourteenth and Fifteenth Counts.[18] It is noted, moreover, that the Fourteenth and Fifteenth Counts bring claims grounded upon both federal and state constitutional law. Consequently, even the Counts containing the federal law claims invoke state law. Under these circumstances, it appears the crux of Plaintiffs' claims relate to state law. State law is implicated and therefore predominates in every aspect of this action and remand of the entire case is appropriate.

Remand of the entire matter, including the section 1983 claims, is even more compelling in this case because the federal law claims are factually tied to all of the state law claims. *See Martin,* 756 F.Supp. at

527 (as a "practical matter," remand of the entire action is appropriate when "it would be impossible to remand the state claims ... and to retain the tangential federal claim which is inexorably tied to the state claim."). The crucial allegations supporting the federal and state law claims all relate to DeBiase's conduct toward Moore. The first eight Counts in the Complaint are directed only at DeBiase and appear to be based solely on state law. The remaining state law Counts, although directed at all of the Defendants including DeBiase, are all predicated upon the allegations of wrongdoing by DeBiase contained in the first eight Counts.

Similarly, the federal law claims are based on the allegations of wrongdoing by DeBiase. The Thirteenth, Fourteenth and Fifteenth Counts all seek to recover from DeBiase, the Public Officials, Dunellen and the Police Department for the results of DeBiase's actions directed at Moore. The claims brought against the Public Officials, Dunellen and the Police Department are predicated upon allegations that these defendants either actively conspired with DeBiase or permitted DeBiase to violate Moore's rights under state and federal law. Indeed, it appears to be unlikely that the claims against the Public Officials, Dunellen and the Police Department can succeed if the claims against DeBiase fail. In this respect, the federal law claims are based on the same facts as the state law claims.[19] Because the state law claims and facts are

---

**17.** Removal under section 1441(c) appears to have been appropriate. The Complaint presents federal questions under 28 U.S.C. § 1331 because it alleges violations of section 1983 and the United States Constitution. In addition, those federal questions appear to be separate and independent from the state law claims under the *Finn* test; the federal and state law claims appear to seek separate relief for distinct wrongs. *See Finn,* 341 U.S. at 14, 71 S.Ct. at 540. Nevertheless, the factual allegations in the federal and state law claims are related and are largely the same.

**18.** The Removing Defendants argue the entire Complaint asserts claims under 42 U.S.C. § 1983. Defendants Brief at 4. This assertion, however, is belied by the fact that only two Counts specifically refer to the United States Constitution. *See* Fourteenth and Fifteenth

Counts. Of the remaining Counts, only the Thirteenth Count refers to any constitution, and an unspecified constitution at that. Moreover, the rest of the Complaint appears to plead nothing more than unspecified state common law tort claims.

**19.** The Removing Defendants arguably have conceded this point when they state: "The various allegations in this Complaint *in toto* amount to a factual pattern of alleged violation of constitutional protections and civil rights falling squarely within the provisions of [42 U.S.C. § 1983]." Defendants Brief at 4. The Removing Defendants thus acknowledge that their claims are all grounded upon the same facts. Whether this statement accurately characterizes the Complaint is discussed elsewhere. *See supra* n. 18.

substantially implicated in the federal law claims, it appears that the state law predominates.

The Removing Defendants make several arguments against remand. First, the Removing Defendants argue federal courts should not hesitate to adjudicate questions of federal law which have been removed from state courts. Defendants Brief at 6–7 (citing *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962 (7th Cir.), *cert. denied*, 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 70 (1982)). It cannot be disputed that federal courts should decide issues of federal law which are properly presented. The Removing Defendants ignore, however, the specific provision in section 1441(c) which grants a district court the discretion to remand an action in which state law predominates. The Removing Defendants' argument, therefore, does nothing to diminish that remand power.[20]

Second, the Removing Defendants argue federal courts should readily adjudicate both section 1983 claims and state law claims closely related to the section 1983 claims. Defendants Brief at 5–7 (citing *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970); *Glover v. New York*, 401 F.Supp. 632 (E.D.N.Y.1975)). This argument, however, goes to the existence of pendent jurisdiction over state law claims which share with federal law claims a common nucleus of operative fact. *See Hagans*, 415 U.S. at 536, 94 S.Ct. at 1378–79. The issue of pendent jurisdiction, however, is inapposite to the issue of remand pursuant to section 1441(c) when state law predominates.[21] Congress, in amending section 1441(c), expressly shifted the analysis away from the question of pendent jurisdiction. *See* H.Rep. at 23, U.S.Code Cong. & Admin.News at 6869; 136 Cong.Rec. at S17581. Therefore, this argument does not bear on the question of whether a court should exercise its discretion to remand a case in which state law predominates.

The overwhelming majority of the claims in this case are grounded exclusively in state law. As well, the claims grounded in federal law are also grounded in state law. Therefore, state law predominates in this case. Under section 1441(c), a district court has the discretion to remand any matter in which state law predominates.[22] A district court, in exercising that discretion, must bear in mind that removal statutes are to be strictly construed against removal. *Boyer*, 913 F.2d at 111. Accordingly, this case is remanded to the Superior Court of New Jersey.

*Conclusion*

For the reasons set forth above, this action is remanded to the Superior Court of

---

**20.** *Wilson* is inapposite to the Removing Defendants' argument. In *Wilson*, the issue was whether a defendant could remove a case upon plaintiff's amendment of the complaint to assert federal law claims. 668 F.2d at 964. The Seventh Circuit in *Wilson* reversed the district court and ordered a case remanded back to state court. *Id.* at 967. The Circuit noted a district court, in deciding removal questions under 28 U.S.C. 1446(b), should "bear in mind, and where possible avoid, the frictions in a harmonious federal system that result when litigation involving state-law as well as federal-law is abruptly shifted into federal court...." *Id.*

**21.** The cases relied upon by the Removing Defendants are inapposite because the cases merely involved exercises of pendent jurisdiction. In *Hagans* for example, the issue was whether the plaintiff had alleged a "substantial constitutional claim" under section 1983 and 28 U.S.C. § 1343 which would permit a federal court to

exercise jurisdiction. 415 U.S. at 536, 94 S.Ct. at 1378–79. The Court noted that when a claim is stated under section 1343, pendent jurisdiction may exist over certain state law claims. *Id.*

In *Jenkins*, the issue was whether the district court properly ruled on the question of liability on a section 1983 claim and the state law claims pendent to the section 1983 claim. 424 F.2d at 1231. There was no discussion at all in *Jenkins* regarding remand or pendent jurisdiction.

In *Glover*, the issue was whether the federal court had pendent jurisdiction over certain state law claims which shared a common nucleus of operative fact with a section 1983 claim. 401 F.Supp. at 636.

**22.** The argument that this case should be remanded is made even more compelling because, as discussed above, the factual allegations supporting Plaintiffs' federal law claims are predicated upon the factual allegations supporting Plaintiffs' state law claims.

the State of New Jersey, Law Division, Middlesex County, for all purposes.